Our second case today is the United States ex rel Bunk v. Gosselin World Wide Moving. Mr. Anderson. Good morning, your honors. May I please the court? I'm Jeffrey Clarem, U.S. counsel, Justice Department counsel for the United States. We've agreed with the Relators Council that we of time and that I will reserve three minutes of that time for rebuttal if it is okay with the court. Very good. Your honors, the district court in this case found that the defendants had submitted more than 9,000 false claims to the government but concluded that it had no authority to impose any of the penalties authorized by statute because to do so would violate the The court's holding rests on three principal grounds. First, it found that the statute compels the court to consider imposing a minimum penalty for every claim proven and established regardless of the fact that the relators in the United States had sought considerably less penalties from the court. Second, it found that this mandatory minimum penalty was grossly disproportional to the harm and the nature of the offense principally because it thought there was no adequate showing by the plaintiffs of economic injury to the government. And thirdly, it concluded that because the penalties it believed had been imposed were excessive, it had no constitutional or statutory authority to remit the penalty to a lower amount that is incorrect. But I'd like to start with the last one, if I may. The scope of the court's remedial power upon finding a constitutional violation. The case law is clear. You're contesting the constitutional violation. Absolutely. We think this is perhaps the most patent error in the district court's holding. When you talk about the constitutional error, are you talking about the court? The court, your honor, felt that it could only consider the mandatory minimum penalty for every claim established, even though the demand before it, the demand by the relators was your claim. The error is the all or nothing approach for the court below. Yes, that's right. But what I'm getting at is whether they all or nothing, what the all is, is the all 50 million plus or is the all 24 million? Well, your honor, in our opinion, the government and the exercise of its prosecutorial discretion or a relator in the application of the well settled principle that a plaintiff is master of the complaint is not required to ask for all the penalties that are authorized by the statute. No, but hold on, I want the answer to the question. I'm sorry, your honor. Is it 50 million or 24 million? We believe that the... Is that the all, is the all or nothing? Which is the all and the all or nothing? We believe it is 24 million. You believe it's 24 million? Right, the amount requested. So the 50 million is off the table? Yes, your honor. Okay. And once the court, and again, we believe the court's finding of a constitutional violation is an error, but I'd like to start, if I may, with the scope of the remedial... What do we do? But if you will correct on that, it confuses me when you say 24, not 50, whatever, 55 versus 24. Yes, your honor. So you think if we agree with you, we would do what? Just say the fine is 24 million? I mean, the award is 24 million? Well, your honor, we think the correct approach is to start with the penalty that has been requested by the government. But I didn't ask you that. I'm sorry, your honor. But we would do what? You would have us as a court just say the solution is the 24 number? Yes, your honor. We would not send it back for the court to consider what the appropriate number is once the court understands it does, if it does have authority to adjust that number down. You don't think that's the appropriate remedy? Well, that's certainly within the court's discretion to remand. We don't think that's necessary in this case because it's principally the application of questions of law to a settled record. The proportionality standard is well established. I thought your position was that the 24 million that you've settled on here now could not be adjusted down because that is the statutory minimum. Well, your honor, there's a difference between the court's discretion as a matter of statutory authority and its remedial power once it concludes that the statute is unconstitutional. As a matter of... But the statute says for each violation, each false bill... Each claim, yes, your honor. You get a minimum of $5,500 or something like that. Up to $11,000 is $500. Yes, the statute says the defendant is liable. So $5,500, if it's the minimum, the court can't come below the minimum, right? Unless it finds it's a violation of the excessive fines clause. Well, your honor, again, we believe that, first of all, the statute says that the defendant is liable for a claim. It doesn't compel the government to prosecute a claim in the first instance. He's asking about the numbers. He's not asking about all that, I don't think. What number is at play? That's the question. Again, your honor, it is our position that the number requested by the relators and the government is at play. It's the $24 million. That is less than the statutory minimum. You think the court then would have to adopt your number? Yes, your honor. Why is that so? If, in fact, you just said there's a distinction between your discretion, which is what you've come up with at $24,000, and the court's discretion under a remedy to a constitutional violation, why couldn't the court say the $55,000 number is excessive, and I think under the facts $37,000 is appropriate or $10,000 is appropriate? Why is it necessarily $24,000 is what I don't understand. Well, your honor, that's certainly a possible outcome in the case. I thought you were going to say that you're not conceding there's a constitutional violation. We're not. Your position is there's no constitutional violation, either at $50,000 or at $24,000. Absolutely, your honor. So once the government says we've reduced our penalty claim to $24,000, that's an exercise of prosecutorial discretion vested in the Attorney General of the United States? Absolutely. And that's the number? Yes, your honor. I thought that was going to be your position. I'm sorry, your honor, if I've been unclear on that. That is our position. And wait, this is the number that has been requested. Well, then the court wouldn't have any discretion to reduce the $24,000. Not as a matter of the statute, no, your honor. That's the minimum. Right. And then the court turns to a constitutional violation. But if the $24,000 violates the Eighth Amendment, then it's another matter. That's right, your honor. And the court said, if it violates the Eighth Amendment, I've got to go back to zero. That's right, your honor. And you say he's wrong on that. Yes, we think he's very wrong on that, your honor. He said, but if I do have discretion, I'd give him $1.5 billion. He did say that, your honor, yes. But again, turning back to the question of the court's remedial authority. Is the $24,000 the minimum you can ask for under the statute? No, the minimum we could ask for was the $5,500 penalty for each of the- Total. Total. What was the total? In excess of $50 million. So in other words, your theory is you have the absolute discretion to ask for anything, and you can ask for it, and the court can ignore the statute. No, your honor, we want to characterize it. Well, I am, because what'd you ask? Where's your $24,000 come from then? We have decided that the government's remedial and retributive purposes- I understand. You picked the number. Yes. Government picked the number. The government could have used that some form to come up with a $100 fine, right? We disagree with that, your honor. The way our construction of the statute is that a penalty is imposed per claim, and that the range of that penalty is established by statute, and the court has no discretion to depart from that range. However, a relator or the government can ask for a smaller subset of claims- I'm saying, so why couldn't you have asked for $100? I'm asking you that question. Because the penalty, it is a penalty per claim determination, and $100 even for one claim is below the statutory minimum. Well, that's what I'm asking. What is the statutory minimum per claim? $5,500. All right, so you could have asked for $5,500. We could have, or any number of the proven claims up to the number of claims. Then your theory you're asking us to approve is, despite what the statute says, the court has to read the statute. But we don't have to, and if we want to read it differently, then the court has to follow our reading of the statute. Well, your honor, again, we wanted to characterize our position. But that's exactly what it is, though, isn't it? Again, we must respectfully disagree, your honor. Tell me, what else could it be then? If the court, if the statute puts an obligation on the court, how does the court not follow the statute again? Because you ask him not to? Again, your honor, the court is, in our view... I'm just asking you again, under what authority does the... There's one argument that the statute calls for a minimum payment of $5,500. And in this case, that would amount to $55 million. Yes, your honor. That is what the statute requires. Doesn't it look like what the statute requires, under the statute? Well, that hasn't been our position through... I'm asking you, but I'm asking you, isn't... What am I missing? If the statute says minimum per violation is $5,500, multiply that by the number of violations, that equals $55 million. Does that not look like what the statute requires? That's what the statute authorizes, your honor. That's our position. I thought it was $50 million. Whatever the number is. $50 million, $200,000. That may well be... $9,200 and some violations. I don't recall a specific number offhand, your honor. It is in excess of $50 million. But your argument is, despite that statutory instruction, that you could ask for anything less that you want to. Provided it is an appropriate multiple of the number of claims proven times the statutory authorized penalty. As the court did in the... You said $5,500 total would be enough, I thought you said. Per claim. In the exercise of prosecutorial discretion, the government would decide to see one penalty... What's the lowest possible number the government could ask for? $5,500. That's what we just said. So you think... And if the government asks for $5,500, you think the court would be bound by that number? That would be the issue before the court, whether that's... I didn't ask you what the issue before the court is. I asked you your position on that issue. If you ask for only $5,500, then you think under the law, the court is required to give you no more or no less than $5,500. That's your position. It's the government... As the plaintiff has mastered the complaint, the government has... Just as if the government had decided to only prosecute one claim, even though more claims are out there... If the plaintiff isn't always master of what the law says... Yes, Your Honor. Well, Your Honor, I don't seem to be making any headway with this point. So if I might... I guess the question here is whether... How much prosecutorial discretion the Attorney General has, or whether the court has some authority to exercise prosecutorial discretion. Well... And normally, I always thought that the prosecutor does. Yes, Your Honor, that's always... Now, this was a civil claim, though. And that normally doesn't sound like prosecute. But it's a False Claims Act, which is a criminal act in a normal sense, right? Well, there's a criminal statute and a civil statute. The civil statute is the only one at issue here, Your Honor. Right. And these folks have already been... Some of them have already been prosecuted criminally. Yes, that's correct. Your Honor, just... Again, I see I'm not making any headway with this point. Assuming that the number that the court has to start with is the $50 million. The amount... The minimum penalty per every false claim established at trial. And those numbers are not in dispute. The question of the court's remedial discretion really is the same. If it thinks $50 million is too high, is it obligated and is a constitutional violation? Is it obligated to throw the statute out entirely and impose no penalty whatsoever? And the law is very much contrary to that. But it's not the same question. Not the way you're arguing it. Because you could say that's true. You could say it's an excessive fine and the court has discretion to adjust that. But your argument is that the court has no discretion to what number he adjusted. It has to go straight to $24 million. That... Again, Your Honor, we distinguish between the statutory authority to award less than the number of... The amount of penalties per claim established. And the constitutional authority... But if it's a constitutional violation, then the court's completely at its discretion with some review for abuse of discretion or something. The court has discretion to remit the penalty below the amount that is required by the statute. As is true in any separability case. Any time a court finds that a statute is unconstitutional, it still has an unflagging obligation. But if it errs on the constitutional question, the question then we have is where it goes back to? Does it go back to the 50 or does it go back to the 24? Or go somewhere else? If it errs on the constitutional question, again, our position throughout has been that you start with the number offered by the relators in the government. Again, the court does not seem receptive to that argument. Then, assuming the court is correct on that, then it goes back to the 50 million plus. But that can't possibly be right. Under a constitutional violation for... If there's a constitutional violation for excessive fines, if we were to say that, why would we go to your number of 24? That might be something you look at. But wouldn't this test be what is a number that is allowed under the Constitution under these facts? Yes. It wouldn't have to be 24. Again, Your Honor, I was thinking of the starting point for the torrential analysis. Yeah, my question was if there's no constitutional violation. If there's no constitutional violation. If there's no constitutional violation, it goes back up somewhere. Right, under the theory that... Either the 50 or the 24 or something else. Yes, yeah. And you say it goes to the 24 because that's what you and the government asked for. Right, but apparently the court is not accepting that. Prosecutorial discretion in the handling of these things. But no, but I thought what you said, when we turned to the constitutional question, you said it would be the same result. I thought you said. Or you would apply... Just to clarify this. Yes, Your Honor. If in fact there is a constitutional violation of excessive fines at the 50 level, whatever that number is, violations times 5,500. Yes, Your Honor. Then 24 doesn't control... 24 million doesn't control anything at all, does it? No, Your Honor. The court would then decide what is the appropriate number. Your argument is the court would have the authority and would decide the appropriate number of the fine to impose a fine that did not cause a violation of the excessive fines provision. Yes, Your Honor. And while the court might look at 24, the court doesn't have to accept it. It could go anywhere below 55, basically, subject to our review of that number. Wouldn't we send it back to the court under the excessive fines theory to have that... Again, Your Honor, the remand is certainly open to the court once... I didn't ask if it was open. You don't have to tell us what our authority is. We know that. I'm asking what would... We would just plug... We would pick a number? You would apply the constitutional standard to the record before you, principally questions of law. And in the first instance, we would decide the fine is your position. Yes, Your Honor. Okay. You have the authority to remand. You have the authority to decide it in the first instance. Or we could send it back. Yes, Your Honor. You could do either of those things. Either way, we believe reversal is required here. The excessiveness standard that the court applied below is simply incorrect. The lead case on this is the Supreme Court's decision in a case I'm sure to mispronounce, but Bajaj Tejian, which makes clear that the touchstone of this analysis is deference to judgment. Congress has exercised in deciding what kind of conduct is culpable and deciding what kind of penalties to impose. There are several factors the court can consider in undertaking that analysis. I can look at the totality of the misconduct in relation to other kinds of crimes. Do you reserve some time, Your Honor? Try to, Your Honor, yes. Okay. I can conclude now if the court is telling me this is correct. Blair. Clare, I'm sorry, has got some time too. No, I'm Mr. I'm Jeff Clare, Your Honor. I'm counsel, I'm Justice Department counsel. Oh, I thought you were Mr. Anderson. I'm sorry, Your Honor. I called Mr. Anderson. I'm sorry, Your Honor. I had hoped I had straightened that out when I... That's all right. We did have a prior... I apologize to you. We had a prior agreement the United States... I apologize to you. You're being sneaky with the court, Clare. I certainly hope not. So Mr. Anderson, though, has... He's next and he's got five minutes. Yes, Your Honor. All right. Thank you. You have some time. You reserve a little bit of time. And Mr. Anderson, you're next. Thank you, Your Honor. The relators have a much more specific model for harm and coming up with the number of the constitutional ceiling. It is based in the sentencing guidelines. Under U.S. v. Bakakegian, if I'm pronouncing that correctly, what the court looks to... You say that is correct pronunciation? Yeah, if I'm correct about that. All right. Bakakegian. All right. If Gosling were before you as a criminal defendant facing a criminal fine for the bid rigging and price fixing that it concealed through its false claims, you would apply section 2R1.1D of the sentencing guidelines. This is in the relator's brief. Does that... The guidelines don't control, though. Yes, they do. They do. In an excessive fines case, even though this is obviously not a constitutional document, the court looks to the sentencing guidelines to derive how the harm of the wrongful conduct is assessed. Wait, wait, wait. You're telling us that if there is an excessive fine in this civil case, we're bound by the guidelines? Well, the guidelines tell you what the range of harm is. That's correct. We're bound by guidelines, a sentencing guidelines calculation? Yes, that's what the law says. And there was a recent case, U.S. versus 79,000-some dollars, written by Judge King on that point in 2011. That Jalarum case? No, no, no. It was after Jalarum. It was just a number... It was a number that was forfeited, where the district court applied the wrong sentencing guideline, and this court vacated and remanded for consideration to deal with the excessive fine challenge to the forfeiture. In a civil case? Yeah. No, that was a criminal fine. It might have been a civil forfeiture. It wasn't a false claims act case. Well, doesn't that make a difference? I thought you told us that in a civil case, we're bound by the criminal sentencing guidelines? In a civil case where there is an excessive fine objection to the amount of the penalty, you look to the sentencing guidelines to fix the objective measure of the harm. And in a bid rigging case, the sentencing guidelines don't look to the provable damage of the bid rigging, because that's always impossible to derive with precision. What they look at is the volume of commerce affected. And the sentencing guideline 2R1.1D says you assess 20% of the volume of commerce, which in this case would be an $8 million contract. By 20%, get you to $1.6 million. You made that argument to the district court? Yes. Okay. And the $1.6 million is in turn multiplied by the 10 times multiplier that the district court acknowledged applied from State Farm. That gets you to $16 million. In U.S. versus Ahmad, this court applied a 17 times multiplier on a forfeiture. And this is enough to establish the $24 million that the government asked for as under the ceiling. But if you find that $24 million may be too much, you have to remand it to the district court to assess with a view to the objective standards of the sentencing guidelines. Because $11,000 is not enough. $500,000 is not enough, because the court said that's what he thought was the appropriate standard. But that's just judicial legislation. That's like a substantive due process argument showing up in the Eighth Amendment context. The $1.5 million is not enough, because it's the 10 times multiplier times the imputed $150,000 profit that Gosselin made. But we know from Ahmad and Jalaram that the profit is not what you look to. That is irrelevant in an excessive fine case. When you look to how much bid rigging that was falsely certified should be punished, you have to start with the sentencing guidelines. You look at the volume of commerce of that contract, and you derive the constitutional ceiling from there. And if the court has no further questions, I thank you very much for the time. Thank you, Mr. Henderson. Appreciate it. And Ms. Rutenberg? May it please the court, good morning. I'd like to begin by addressing something that I think that Mr. Clare's argument crystallized in this court this morning, which is the argument that Gosselin made with respect to the invited error doctrine. The argument that the government is making on appeal with respect to this excessive fines issue is the opposite of the argument that the government made below. And for that reason, as well as the reasons set forth in our cross-appeal with respect to standing and the appointments clause and the take care clause, this court shouldn't even be reaching the excessive fines issue. On appeal, the government's position, as you sort of just heard it articulated, is that the court should have exercised some kind of constitutional discretion to have imposed a penalty below the statutory minimum, whatever discretion level that would have been. And as the counsel is arguing today— What do you say the statutory minimum is? The statutory minimum, very clearly under this court's opinion in Harrison, is $50,248,000. That's the statutory minimum. That's the statutory minimum. But they say they exercised prosecutorial discretion and reduced the claim to $24 million from the 50 million. That is what they're asserting now on appeal, Your Honor. But here's what that crystallizes. What that crystallizes is their position below— And that was addressed in the district court. That was addressed in the district court, the city's opinion. The district court expressly addressed the $24 million number as to whether or not it would be constitutional under the excessive fines clause. It addressed the $50 million as well. And by the way, Your Honor, no party below contended that the $50 million penalty mandated by the FCA would be a constitutional amount on the facts of this case. No party contended that. In fact, when the relators originally requested the $24 million penalty, it was with the recognition that the $50 million penalty could pose constitutional problems. You're saying the government conceded that the $50 million was unconstitutional? Let me make— Are you saying that yes or no? The relators did. The government didn't intervene below. The relators said it was unconstitutional? The relators said that the $24 million was in recognition of the $50 million being a constitutional problem. They didn't go so far as to say it was unconstitutional. They did not say it was unconstitutional. That's right. I've looked at this thing pretty hard myself. Yes, Your Honor. And I can't find where anybody's conceded that $50 million was unconstitutional. They don't concede that it was unconstitutional. But they did recognize an issue of constitutionality. Yes. And in recognition of that, they reduced the claim to $24 million. Which the district court expressly considered, as Your Honor recognized, and also, as the court recognized, there was no principled application of the statute. So Mr. Clair's argument today in response to Judge Shedd's questions about what the prosecutorial discretion would have been, assuming that private relators have prosecutorial discretion at that stage of a case and a civil case— Assume they have prosecutorial discretion? Who— There's no one that has prosecutorial discretion except the prosecutor. That's what we said, Your Honor. Courts don't have prosecutorial discretion. That's right. And that's the argument that we made in our briefs as well, Your Honor. And below, again, the relators prosecuted this case or brought this case from the get-go, and the government did not intervene until this appeal. So what I'm saying— But the relator is acting on behalf of the government. Well, the relator also has its own interest in the case, Your Honor. And simply, the point that we made in our briefs and that I'm making now is simply that there's— when we're looking at prosecutorial discretion, what's relevant even in a criminal case is the stage at which the discretion is exercised. And here, there wasn't actually discretion. There was no principled application of the statute. And Judge Shedd specifically asked Mr. Clare, what is the minimum number that the government could have asked for, the relator could have asked for, because you've asked for $100. So you're saying the prosecutor abused his discretion? No, I'm simply saying that the 24— Well, you said there's no principled application of it. I'm saying that the— Well, first, I'm saying that the relator didn't have such discretion. The court certainly didn't. The relator and the government are the same thing. I don't agree with that, Your Honor. I don't think that's what that Vermont case says. Well, Vermont actually says— respectfully, Your Honor, says the opposite. The Vermont agency case specifically says that the False Claims Act gives the relator an interest in the suit, and for standing purposes, which is what the Vermont agency case was focused on in that section, the relator would need separate standing apart from just being an agent of the government. But in the case of the Vermont proceeding, the relator is acting as the attorney general, and the government has a right to come in. That's the way they work. Some of us have been involved in some of that stuff. Sure, and even if that's the case, Your Honor, I think that the point that I'm trying to make here— They came in. The government came in here. They came in on appeal, yes. We reduced the claim to $24 million, in recognition of the fact that there might be a constitutional question. The relator did, in fact, do that below. And you say that was not a principled exercise of prosecutorial discretion. Well, what I'm saying, Your Honor, is based on what Judge Tringa said, I believe in footnote 9— What was unprincipled about what the government did in reducing the claim from $50 million to $24 million? What evidence do you have here that they acted in an unprincipled way? Your Honor, what the court said below when it looked at the application was that the penalty, the $24 million penalty, does not result from any principled application of the FCA, as it is not a multiple of $9,136 and any number within the statutory range of $5,500 and $11,000. Rather, the penalty appears to be based on nothing more than what the plaintiffs think is an appropriate number under the circumstances. Regardless of that, though, the reason that I raised this issue is simply to crystallize what they were actually arguing below. And I think that the court was addressing it in the questions to the government. Do you think there was a question of excessive fines raised below? Absolutely, yes. Do you think there's a question of excessive fines raised in this appeal? There is not a question of whether the $50 million statutory fine would have been excessive. And that, by the way, is the starting point. The $50 million is off the table. They reduced it to $24 million. The court wouldn't have had the authority on its own to reduce to $24 million. And as But whether the $50 million is excessive or not, I don't understand why that has anything to do with this right now. Because the excessive It's a question of whether the $24 million does. No, Your Honor. Respectfully, the starting point, you asked They didn't ask for $50 million. I'm sorry? They didn't ask for the $50 million. No, but they argued But you think that $50 million is in play because that's the basis on which the court has to assess if there was an excessive fine in this case. Isn't that correct? That's correct. I don't know. Suddenly today it got to be two different trains, and maybe it should be. But let's just talk about the excessive fine issue as you understand it. If the excessive fine issue was in this case, which it is, and if it's properly raised on appeal, which you may argue about, but let's say it is before us, then isn't the question the statute calls for a minimum of a $50 million fine in this situation. We have to decide if that violates the excessive fines provision. Isn't that the issue? If it's properly before this court, yes. Isn't that the issue? Yes, and with the government And if that's true, that $24 million really has nothing to do with anything. That's absolutely correct. And in fact, what the government argued below was the court has no discretion on its own, none, to impose a penalty below the statutory minimum of $50 million. They essentially were arguing $50 million or less. What would the court do if the court found that $50 million, what the court did do, it was an excessive fine issue, wasn't it? Yes, and it was an as-applied challenge to But wait, but then the court said the fine would be zero because the court understood it couldn't adjust that minimum. Is that how you read the court? That's what the government argued, and that's what the court found under the Harrison case. That it could not adjust. It was $50 million or nothing. Well, what the court found was, I don't know that I would say or nothing in the abstract. Do you think from this record, it appears that the court understood it could have imposed a fine of less than $50 million to save the statute, as applied in this case, from a constitutional excessive fine issue? No, in light of the Harrison decision, I think the court That's not what the court thought. I think what the district court here said was, under this court's interpretation of the False Claims Act, which requires one penalty to be imposed per claim, and the government, even today, is emphasizing it was $9,136. I know that we got that. Move on to the rest of your argument. But if the application of a multiplier leads to an excessive fine, you have to do something to correct it, don't you? In a case where a portion of a statute would work an unconstitutional penalty as a Yes or no. Well, yes, but the something is not enforcing the statute, severing that portion of the statute. What do you do with the fine when you have a multiplier? And the multiplier times the fine times the number of violations equals a humongous number, $5,800 trillion. Is your theory too big to fine? There's two options, Your Honor. Right. Option number one is the one that the court did. Option number one is that the court says, under this court, under the Fourth Circuit's jurisprudence, when we have a multiplier. You think the reading of the law is that if the fine is so big, based on the normal way you calculate a fine, if it gets to be so big, you win if it violates excessive fines because the number has to be zero? It's not that the number has to be zero. The number ends up being zero because that portion of the statute is severed out and not enforced. But it's not just a comparison. Or a remedy for an excessive fine under a statute. If there's an excessive fine, the remedy has to be the number goes to zero? Option one is that that portion of the statute is not enforced. The number would go to zero. My question, is that what you're telling us? If there's an excessive fine calculation in a case, based on the minimum fine times a multiplier, if that number appears to be an excessive fine, the constitutional remedy is that the fine imposed must be zero. That is correct, Your Honor. Because on an as-applied constitutional challenge, that portion of the False Claims Act, the penalty provision would not be enforced. Now, the second alternative... Why couldn't it be enforced in a way that was a fine but constitutionally permissible because it doesn't run afoul of the excessive fines clause? Well, so that brings me to the second option, which is the court's first alternative, which is the one that is most consistent with the text of the False Claims Act. It's not consistent with the government's argument below, and it's not consistent... You know what, though? But you're not answering the question. You're adding a lot of editorial comment, which I'll let you do that in a little bit. You just told me it had to be zero. Now you're telling me there's an alternative. So if there's an alternative, it doesn't have to be zero. The answer is it does have to be zero, Your Honor. But it's not that it has to be zero dollars. It's that the penalty, if there's a portion of a statute... Well, I understand your theory on how you get to zero. Okay. But that doesn't change your answer to the court, that the fine has to be zero. Yes, and if the... That's right, and that's exactly what... So your idea is a remedy for an excessive fine is not a reduction in the fine. It's severing and declaring unconstitutional in this as-applied case, severing and declaring that part of the statute unconstitutional as to this defendant. That's exactly right, Your Honor. So if you have enough violations, you can get out scot-free. Well, I would say no to that, and that's an argument that was made in the briefs. But here's the problem with that argument. I think that's preposterous. I think the argument is preposterous, and here's why. But it sounds like what you're saying, that this should be zero, because it's just too much, it's too big, so it has to be zero. But it's not just a comparison of the dollar amount, Your Honor. It doesn't make any difference. So, you know, that's nice window dressing. But again, whether we say it looks like because, gosh, you can't find somebody 50 million, it's got to be zero, or you have some theory about the statute becomes unconstitutional, is severed, and that provision is unconstitutional. The net effect is, your theory is, that a fine that's too great on a normal calculation is reduced to zero one way or the other. That's your view. But it's, but under Bajikashian, which I believe is actually the correct pronunciation, under that case, the excessive fine analysis is not just a comparison of the dollar amount. Doesn't make any difference. Doesn't make any difference what it is or is not. Your position is that if there's an excessive fine in this case, as a matter of law, the fine has to be reduced, no matter what the theory is, to zero. That's right, Your Honor. I think what I'm about to say, though, was really aimed toward Judge King and Judge Thacker's questions with respect to how that is actually applied. And I think, let me say. Because let me tell you what I think. Their questions, exactly my questions. The same questions. Because I think, quite frankly, that position is preposterous myself. I think that puts me in accord with Judge King, at least. And so I don't want to, I don't understand. It sounds nice, because you know what that does? What he asks you is, your argument then says, you may be right. If you're going to violate the law, violate it so much, you're too big to fine. That's exactly where it goes. May I respond to that? Sure, sure. The problem with that argument is that it completely ignores all of the other considerations that Bajikagian says have to be considered with respect to culpability and egregiousness. If a defendant is found to have purposely raised the number of invoices, and they're scienter with each of these invoices, and they say, look, by design, we're going to just submit a ton of invoices to try to avoid this fine issue and get that number up really high. You have the opposite of the situation here. You have substantial aggravating factors that would then, under State Farm, under the Supreme Court's holding in State Farm, would justify a much greater ratio of penalty to harm. And so that's why I think that that argument— But if it fell short of the multiplier, what would your remedy be? It depends— Zero? Your Honor, it depends on whether this court is following— No, no, no, no, no. Wait a second. If the multiplier in your scenario went to some great number, and that number in your scenario created an excessive fine, that provision of the statute would be severed as unconstitutional. That's your theory. It probably wouldn't constitute an excessive fine. It probably— It probably would not constitute an excessive fine under my scenario. That's the point, Your Honor. Part of the reason that the district court found this was excessive was due to the extensive mitigation in the case that the court detailed in its opinion. When you say the court found it was excessive, you're talking about the 50 or the 24? The 50 million, Your Honor. So you're saying the court did find the 50 was constitutionally excessive? It did, yes. Okay. And that was with a comparison. And this actually gets to another question that the court has posed this morning. That also gets to what is the starting number. And under Bajikagian and all of the other Supreme Court jurisprudence on this, the starting point is the statutory minimum. It's a comparison of the statutory minimum to the harm, both tangible and intangible, including culpability. It's not a comparison of whatever number the plaintiff requests. The excessive fine analysis is one about whether the statutory penalty is excessive. And I did want to respond to, Your Honor, with respect to the alternatives in case this court does determine that Judge Tranga erred in severing the provision of the false claims act. What would we do? We tend it back to him in the first instance or not? Yes, Your Honor. And I think that the most— And why would we do that? You would do that because the court below already has done an analysis, as it would be required to do if it had erred and was supposed to go below the statutory minimum. That's not a basis to send it back, though. That might be a basis to accept his alternative, isn't it? That's not a basis to send it back. Well, yes. And what I meant, Your Honor—I should clarify. I apologize. What I meant was to send it back for imposition of the first alternative. Oh, oh, oh. Yes. I'm sorry about that. You don't mean to send it back for any further consideration? No. It's absolutely— Why would we need to send it back? Why don't we just instruct him to do that? That's right. And that's exactly right, Your Honor. I just understood your question. The alternative, what, a million and a half? No, Your Honor. I think that the most appropriate alternative—and again, if we're getting to that, then we're not applying one penalty per claim. What's the answer to his question? It's the first alternative, which is imposing a penalty for the FCA violative conduct. That's the penalty that's the most consistent with the text of the statute. Do you have a number? Do you have a number? Oh, a dollar number? Yes. It was a penalty that the court imposed for $11,000 for one false certification that Gosland filed. You want the $11,000? Well, that's the number the court imposed under that first alternative analysis. And so I see my time is up. One violation. Ms. Thacker has a question. Yes. No, I don't have a question. You asked it, actually. Could I just finish my sentence on that one? So, yes, Your Honor. The first alternative was the alternative. Do you think that the sentencing guidelines control? No. Why don't they control? I would point the court to the State Farm case again. The Supreme Court and State Farm expressly talked about the existence of criminal penalties and said that while it bears on the seriousness with which the court, which Congress viewed the conduct, it has less utility for determining the dollar amount. And they said that the Supreme Court said that great care must be taken to avoid use of the civil process to assess criminal penalties that can only be imposed after the heightened protections of a criminal trial have been observed, including, of course, it's higher standards of proof. What about a civil forfeiture following on to a criminal action? What about that? You know how you have a criminal action, sometimes there'll be a civil forfeiture as part of it. Do we look at any guidelines for that type of procedure as guidance for this? No, Your Honor. What we look at is what all of the courts who have assessed the False Claims Act, including this court, have determined is the appropriate measure under the False Claims Act, which is it starts out with an analysis of the overpayment. And the only reason that we're even looking, that the relators even want this court to look at the sentencing guidelines, is because there wasn't any money damage in this case. So they're looking for some other way to put a number before this court to make a comparison to the $50 million statutory penalty. But we know there were damages in it because they got together and conspired to fix the bid. Your Honor is identifying the intangible harm, which Judge Trenga did recognize, and his for exactly what Judge King, you identify, and that penalty was $500,000. The problem is that that particular analysis, the method of getting to that number, is the one that is possibly the furthest from the statute itself. What is your theory of this case in the capitalists? It's okay to cheat if you don't cheat really bad? No, Your Honor. What's your analysis of this case? Not at all. The analysis of this case... But your client did wrong, was found to have done wrong. Your client was found liable for submitting a false certificate. That's exactly right. Okay, right. But the problem is... In a number of... I thought he was found liable for 9,200 false bills. As Judge Trenga articulated, the 9,136 invoices are deemed as a matter of law to be false claims. They're false claims. He submitted 9,200 false claims to the United States government. That's the crime way. I mean, you could have 9,200 counts in a mail fraud case for that. Yes, Your Honor. What would the fine be for that? What the court said, though, is that nevertheless, he certainly recognized that a conspiracy that is of this nature harms the integrity of the government's contracting process. There's a lot more than... There are many more claims than that that the court held were barred by the immunity aspect of this thing, which nobody mentioned this morning. No, Your Honor. That had actually nothing to do with this particular... Somebody else, but it's in this case. It, yes, but this particular claim was a completely different... Let me ask you this. So you have 9,000 violations. Tell me how you capitalize this case. What theory of application of the law is that if you cheat a little bit in 9,000 times, it's not bad? No, Your Honor. The theory of this case is that Gosling didn't cheat at all with respect to the 9,136. They're deemed as a matter of law to be false claims. But the culpable conduct that Gosling engaged... So they weren't false claims? They were false claims as a matter of law. But Your Honor has to... By the way, in this business, something that's as a matter of law is often punished more than something that's at a matter of fact. Well, Your Honor, the Supreme Court in Bornstein specifically addressed the issue that the court is raising. So in other words, your position is, although we have 9,000 false claims as a matter of law, we really didn't do it? That's not our position at all, Your Honor. Then what is your position on the 9,000 invoices? Did you do anything wrong or not? No. On the 9,000 invoices... But then you didn't do it. That's what you said you didn't do. What we did wrong and what the liability was... But you were found to have submitted 9,200 and some false claims to the government. That's right, Your Honor. But the question that was posed to the court... But you didn't do it, so you want us to... You're up here arguing that it's wrong. Our argument is consistent... But by the way, let me clarify. When I asked you, did you do it, I didn't mean your argument as well that you did it. I meant under the facts of the case. Under the facts... Well, I think the reason... Under the facts of the case, pick the right word. You submitted 9,000 false claims? Yes, Your Honor. Under the facts of the case, we submitted 9,136 invoices that are deemed to be false claims. But as the court recognized below, there was not independent scienter on each of those invoices. And your view is, your view is, having submitted 9,137 or whatever the number is, false claims, the appropriate resolution for fine should be $11,000. That's correct. And it's because the culpability was limited to, as the Supreme Court recognized in Bornstein, was limited to the FCA violative conduct, which was the submission of the false certification. So you don't think there's any excessive fine issue in this case? You just think that is what the fine should be under just your normal reading of the law and the statute? You think the fine is $11,000, that's what it should be found to be, and that's what it is? And hence, there's no excessive fine issue here at all? No, Your Honor. Under Harrison, there's an excessive... No, I'm asking, so you think there is an excessive fine issue in this case? $50 million, yes or no? Yes. But you think the only appropriate remedy is either zero or $11,000? Yes, but the dichotomy is a little bit false, Your Honor, simply because under this court's precedent... It's not false at all as to what you would have to pay, is it? No, Your Honor, but... Right, I know you, it doesn't make any... I'm sort of a bottom line kind of guy. Your argument is, and you have a theory in either case, but your argument is that it's only appropriate that your client pay zero or $11,000, yes or no? I think that that's a fair summary, I simply would want to explain... I know you've been doing that, you've been explaining it. I've been trying. I know, you've been doing it, but I just want to understand your position. But to get there, we got a first rule that the fine, $50 million fine and the $22 million are excessive under the Eighth Amendment. Yes, and in fact, the $24 million was not expressly, but implicitly conceded to be excessive because the government and the relators have consistently taken the position that mitigation shouldn't be considered at all, which flies in the face of... I thought you said the $50 million is what they implicitly conceded to be excessive. Both, but they've all... Oh, you say that the government has conceded that both of them are excessive. It's a... We'll ask Mr. Clare. Could I explain why? If you reserve some time... She's got some more time. Can I just answer that one question as to why? Because I certainly don't want to leave the court with the impression that they stated... He has to decide. Let's see what the government has to say, and then I think you'll get to say something. Okay, all right. It's up to you, though, Jesse. Mr. Clare, do you concede any constitutional imperfections in the $50 million or $24 million? No, Your Honor. The court below asked the government to brief the excessive... It ordered the government to brief the excessive fines issue. We filed the brief saying the $24 million was an appropriate fine and not... The $24 million was an appropriate fine. Did you ever concede that the $50 million was constitutionally excessive under the excessive fines clause? We did not, Your Honor. Our hope was to avoid placing that issue before the court, and therefore we did not ask for it. Okay. And that goes to the point that the assertion that the government invited this error. We have argued throughout the case that at least $24 million is an appropriate fine. We have argued throughout the case that there's a difference between a district court's statutory authority to award less than a minimum fine for a penalty and its constitutional authority to cure a constitutional violation by ordering a reduced fine. There is ample authority for that proposition. Is it your position if you look at a situation without conceding but thinking there is an excessive fine issue that you get to resolve it, you have the authority to resolve it just as much as the court does under a statutory minimum? Well, I hesitate to venture into this territory again, Your Honor, but our position is we have the authority to decide what issues to place before the court, Your Honor. That's how we see it. But answer my question. Is it your position that in looking at it, if the government thinks there's an excessive fine issue, the government itself can take steps to address the excessive fine issue without the court having to address it, even if that means going below a statutory minimum set by Congress? Yes, Your Honor, and in fact, that's what we have done in this case. We had hoped to avoid placing the constitutionality of the entire minimum fine before the court. All right, Your Honor, the last point I'd like to make today is that the Supreme Court's precedent in this area makes clear that it is Congress that determines the appropriate culpability of an offense. Now, what you've heard from defendants this morning is that they didn't really do anything wrong after they fraudulently procured the contract, that there's no criminal conduct, there's no improper conduct involved in continuing to submit thousands of false claims. Congress sees it differently, don't they? They see every time you submit a false claim, that's an independent claim under the statute. Absolutely, that's the law of the circuit, Your Honor. I respectfully refer the court to the 1986 Senate report on the 1986 amendments of the statute. That report talks about this situation quite specifically. It identifies a fraudulently procured contract and says that every claim submitted under a contract is a culpable act. It carries with it an additional penalty. So this notion that there's no scienter involved in the continued submission of additional claims, that there's nothing really wrong once the initial procurement of the contract has happened, that's simply not the judgment that Congress has made. And this court and every other court of appeals to address the matter has held accordingly that every submission of a claim under a fraudulently procured contract is a false claim to which a penalty attaches. As to the appropriate number for the penalty, Your Honor, if I might leave the court with a couple of data points here. In the Cartwright bid rigging case, which involved a portion of shipments in one country for a six-month period, some of the defendants here were fined $6 million. This is a course of conduct here that went on for three years and included five countries, a much broader scope and much longer duration of misconduct. For a violation of the criminal side of the False Claims Act alone, there is a potential, not only a fine of $250,000 or double the amount of loss to the victim, but in addition, a maximum penalty of five years' imprisonment. That speaks to the kind of culpability of the conduct. I'm reading your brief again. Yes, Your Honor. I think I have it right. The blue ones are, yes. And you seem to indicate what I thought the law is. If there's an excessive fine issue, it's incumbent on the court to come up with a remedy to that constitutional violation. If the court finds a constitutional violation, yes, Your Honor. It is the court's job to— Did the court find a constitutional violation in this case? Yes, Your Honor. So then why isn't it the court's remedy and not your suggested remedy that resolves the problem? Well, it is the court's authority to impose an appropriate constitutional remedy. Right. It can consider the fact that— By the way, and I agree with that 100 percent, but that doesn't mean then that—wouldn't the court have to then decide if your number comported with the Constitution? That's certainly something the court can consider. It's not bound by our number, but the fact that the government— No, no, wait one second. Your theory sort of has been your number takes the constitutional violation off the table. Isn't that your argument? We think that our number does not give rise to an excessive fine, yes, Your Honor. So you agree with what I just said? It takes the constitutional violation for excessive fine off the table. That was our intent, Your Honor. Obviously, we were not successful in that because we submitted a— I say, isn't that your position? Your position that by setting the number at $24 million, you take the excessive fine violation discussion off the table? Your Honor, I'm afraid I can't agree with that. You don't agree with that? The court—because the court always has the authority to decide, even if the lower amount that the government requests— Fine. So your theory that you asked for a lesser number in light of maybe some issue about because the court would still have to independently review the $24 million the same way it would review the $50 million. Is that correct or not? It is correct. I would—the only caveat is I don't think it means nothing at all. I think it's something that the court can consider in an arriving at an appropriate— Let me say this. When I say it means nothing, it in no way binds or limits the court's review and discretion, correct? Yes, Your Honor. We certainly agree with that. So then let me ask this. Tell me your strategy again on why you put that number out there? Well, Your Honor— Because it wasn't going to stop what the court had to do. It was just to make you look good in front of the court? Well, I think, Your Honor, I think prosecutors as well as plaintiffs are wary of over pleading a case. They want to ask the court for a sanction that is reasonable, that will avoid constitutional issues. We thought that was the— No, stop. Stop right there. You just told me that your $24 million does not avoid the constitutional question. You just said that to me. It doesn't avoid the question. However, it is a constitutional amount is our position. But my point is this, but that doesn't in any way affect—the fact that you offered a lesser number does not in any way change the obligation of the court to assess what it does and how it resolves a constitutional violation of the excessive fine provision, correct? Yes, Your Honor. So then the remedy would be—do you think there—tell me, you just think that by offering $24 million, does $24 million have to be reviewed for the question of excessive fine? Yes. Did the court do that? The court started with the mandatory minimum under the statute. I said that's to the $24 million. No, it did not. So you think the court's error was first in not looking at your $24 million as a fine that was acceptable to you. Yes, that's the—in our— But wait. But the court would still have to, you concede, look at your $24 million offer and decide whether or not that was an excessive fine. Yes, Your Honor. That's been our— The court hadn't done that. No, Your Honor. So it would have to be remanded for the court to look at your $24 million offer? It—remand is certainly one way of accomplishing that. Well, how else would we do it? The court could do it yourself. We would just do it ourselves. You could, Your Honor, because the proportionality standards are settled. The scope of the misconduct— So your understanding—you're telling me the court did, but it said the $50 million was unconstitutional, but it didn't pass on the $24 million. Yes, Your Honor. And if I could just— We say the $50 is constitutional. We wouldn't have to remand it for the $24. Certainly not. And bear in mind, Your Honors, on the remand question, even if the district court decides this, this court has de novo review over that question. Have you ever argued anywhere that the $50 million is constitutional? Have you ever said that to us? Are you saying that to us today? Is your position that the $50 million fine is constitutional? That is, it does not violate the excessive fines provision? Your Honor, thus far in the case, we have not taken a position on that because— I know, but right here, right now, are you taking a position right now on that? It would certainly raise substantial questions, Your Honor. The whole point of our asking for half that amount— I got it. —is that we— I got it, because you think there is, wink, wink, a violation. You just don't want to say it with the $50 million. Well, again, Your Honor, we— But you've never given any indicate—no, listen. I'm going to be serious with you now. Yes, Your Honor. You've never given any indication below or to us that you believe the $50 million is absolutely devoid of any excessive fine issues. You haven't taken that position. Not devoid of any issues. That's not to say that we— It was an issue. That's the reason you proposed it. You said the $50 million did raise a constitution. It raises an issue. It raised an issue. We have not conceded that it would be a violation. But I don't understand, you know, maybe— I guess, Your Honor, we had—you know, this seems to me, with respect to me, an example of no good deed goes unpunished here, that we had tried to moderate the demand to a level that we thought was constitutionally beyond question. No, but wait a second, though. You can't pat yourself on the back for no good deed without adding the fact your no good deed would not relieve the district court of its obligations to review that. It would not. The constitutional issue is still presented, but the court still has to decide what's grossly disproportional to the offense. What constitutional issue do you say is presented, then? The constitutionality of the $50 million or the constitutionality of the $24 million? Well, our position has been that it is the constitutionality of the $24 million. Yeah, but you say the court didn't pass on that. No, it passed on a higher number, Your Honor. And I think—I'm not sure in the—once the court is undertaking—Your Honor, once the court is undertaking the analysis, the starting point isn't all that relevant. We had hoped to present what we thought was a more reasonable request to the court. I think that the amount of the government's request, the amount of the relator's request is a data point that the court can consider. But it's your view—be sure I'm understanding. I think I do. It's your view that some court, either this court or the district court, would have to look at your $24 million, if that number is to be accepted by the court, and apply some kind of excessive fines analysis to that. If I could just interject one more point on this, Your Honor. This is not without precedent. We have cited the McAbee case from the 9th Circuit. You're talking about the 9th Circuit case? Yeah, the McAbee case, where thousands of false claims are submitted. The government asked for only a very small subset of those claims for a penalty to be imposed. I guess for a hundred and something out of 8,000. That's right. And the court had no problem with that, Your Honor. Well, I think we're wearing this out. Pretty interesting. But Ms. Rutenberg has saved some time back on her cross-appeal, I think. May I ask one question? Sure. Just a simple question. Do you think that the calculation is controlled by the sentencing guidelines? I not controlled, Your Honor. I think there's, I do disagree. You can look to that for guidance. You can look to that. And I point out, Your Honor, that we did file a brief on this below. We pointed out to the court's indication as to what the sentencing would be for a criminal violation of the false claim act. Let me ask this. Would the court abuse its discretion if it didn't consider those guideline calculations? I think the court would err, Your Honor. I'm not sure it's an abuse of discretion, because this court has de novo review of these matters under the Constitution. The guidelines inform the thing. Yes, Your Honor. And again, we briefed this below, Your Honor. We submitted a briefing sign. Thank you. You've answered my question. Thank you very much. I appreciate it. I'd like to give the court two page sites to the court's opinion below. Is this on the cross-appeal? Or is this on their appeal? It's on theirs, Your Honor. But it directly addresses the question that the court just asked. If I could just give two page sites. The $24 million penalty was expressly reviewed as to whether it was an excessive fine by the district court at page 32 of the opinion. It's joint appendix page 1615. Additionally, we already set our position with respect to the criminal fines. But the court also considered the criminal issue. That's at page JA-1606. So 1606 is criminal. And the $24 million was expressly considered and rejected as an excessive fine at 1615. And further, when the court determined what was that second number? 1615 and what was the other one? 1615 and 1606, Your Honor. Is the excessive fine review a de novo question for us or abuse of discretion review? The proportionality analysis is de novo. But the court's factual findings are reviewed for clear error. The court's factual findings with respect to mitigation and damages were not. Damages were contested below. But none of the mitigation was actually contested below, Your Honor. There's no clear error argument being made here. So it's de novo. The proportionality is de novo, Your Honor. But the factual findings are clear error. So in other words, this court would review de novo based on all of the mitigation evidence and the damages figures that the court found below, giving those clear error deference. The court would then do the analysis on the $50 million statutory minimum de novo. In terms of the court had asked or alluded to the other issue that the government had raised with respect to the landed rate agreement immunity in the Shipping Act. I don't know if the court had any questions about that. But if not, then I'll just move to our cross appeal. OK, the. Well, nobody's positions are abandoned just because we didn't ask questions about them. There's a lot of things brought up in these briefs. A lot of briefing here. There is a lot of briefing, Your Honor. You haven't abandoned anything, and we haven't. I would have liked to have addressed it just because it's out there, but I don't have time. That's right. I've got time here to address your cross appeal. OK, thank you, Your Honor. Rebuttal on your cross appeal, I guess it is. Right. The unique circumstances of this case, Your Honor, raised three constitutional problems with respect to the DPM claim, which is the claim that gave rise to the excessive fines argument we've been discussing, standing the appointments clause and the take care clause. In this case, the relators pursued only civil penalties. They abandoned any economic damages claims pretrial by seeking only penalties. The relators were attempting to vindicate the rule of law, as the Supreme Court described it in Steele Co. And they were asserting a sovereign injury based on that vindication of the rule of law. But sovereign injury can't be assigned by the government to properly confer standing on a relator. Otherwise, the Supreme Court's holdings in Lujan and Steele Co. and all modern Supreme Court jurisprudence would really mean nothing. The precise issue in those cases was whether a citizen suit provision in the statutes at issue there were proper. And the courts found in those cases that they were not, because it was a sovereign injury and a generalized injury that was being assigned. And there was no standing conferred by virtue of it. The only difference in this case is that the private party can keep part of the civil penalty, has a bounty, essentially, for a successful claim. But the Supreme Court in Vermont agency squarely held that a bounty alone is insufficient to give a plaintiff standing. The implications of granting standing in a case like this, where the relator, again, uniquely is only pursuing civil penalties, are significant. Because it means that Congress could easily evade Lujan, Steele Co. and all of those other modern standing jurisprudence cases simply by creating citizen suit provisions tied to nominal bounties. Anyone could be authorized to bring a suit to enforce the law for any reason, civil or criminal. And that issue elucidates the Appointments Clause and the Take Care Clause problems here. The Appointments Clause, of course, ensures executive control over core executive. You've briefed all this. Right. And you've used your time up.
judges: Robert B. King, Dennis W. Shedd, Stephanie D. Thacker